## HENRY H. GAGE

*v.*

## THE CONSUMERS' ELECTRIC LIGHT COMPANY.

*Opinion filed December 18, 1901.*

1. PLEADING—*failure to deny alleged corporate existence is an admission thereof.* In the absence of a formal denial by the defendant the corporate existence of the applicant for initial registration of land title, as alleged in the application, is admitted and need not be proved.

2. REGISTRATION OF TITLES—*objections should be raised by exceptions to examiner's report.* In applications for initial registration of title the relation of the examiner to the court is that of a master in chancery in other chancery proceedings, and if no objection is made to the sufficiency of the applicant's evidence by exception to the examiner's report such objection is waived.

3. TAX DEEDS—*term "penalties" construed as used in section 224 of the Revenue act.* The term "penalties," as used in the proviso to section 224 of the Revenue act, requiring holders of canceled tax deeds to be re-paid all taxes, legal costs and "penalties provided by law," does not mean the per cent on the purchase money required by law to be paid to effect redemption, but such proviso merely entitles such holder to the amount paid at the tax sale, subsequent taxes paid, and legal interest from dates of payments.

4. SAME—*right to re-imbursement does not depend upon whether complainant held title at time of sale.* So far as the authority to impose the condition of re-imbursement in a judgment canceling or setting aside a tax deed is concerned, it is immaterial whether the action is brought by the owner who held title at the time of the tax sale or by a subsequent owner.

5. SAME—*holder of tax deed entitled to re-imbursement when title is registered.* An application for initial registration of title, where there are outstanding tax deeds on the property, is, in effect, a proceeding for the cancellation of such deeds, and the holder thereof is entitled to re-imbursement, under the statute, as a condition to the relief prayed in the application.

APPEAL from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

F. W. BECKER, for appellant.

RICHARD S. FOLSOM, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is an appeal from a decree entered in the circuit court of Cook county, finding the appellee company, on the first day of February, 1889, entered into the actual possession of lots 23, 24 and 25, in block 1, Wallar's subdivision of the north-west quarter of the north-east quarter of section 20, township 29, range 14, in Cook county, Illinois, under claim and color of title thereto made in good faith, and for more than seven successive years continued in such actual possession of said premises and paid all taxes legally assessed thereon during said period of time, and decreeing and declaring that the appellee corporation thereby became and was the owner in fee of said lots, subject only to a contract for the sale thereof entered into by said corporation and one W. J. Reibolt, and that said premises should be brought under the operation of the provisions of the act entitled "An act concerning land titles," approved and in force May 1, 1897, and that the registrar of titles should forthwith register such title in the manner provided in and by said act, subject to the terms and conditions of said agreement to purchase the same by said Reibolt.   This decree was entered on the application of the appellee corporation for the initial registration of the title to said premises.   The application was in compliance with the form prescribed by section 13 of the act. (Hurd's Stat. 1899, p. 413.) The application alleged that the applicant was a corporation under the laws of the State of Illinois, and that it claimed an estate in fee simple in the premises.   The sixth clause of the application was as follows:

"*Sixth*—Other person, firm or corporation having or claiming any estate, interest or claim, in law or equity, in possession, remainder, reversion or expectancy in said lands are:   (1) A possible dower interest in husband of Eliza B. Langhorne, etc.;   (2) tax title to lot 24 in Henry H. Gage, residing in Wilmette, Illinois, under deed dated October 24, 1872, and recorded in book 181, p. 50; and un-

der deed dated October 12, 1872, and recorded in book 154, p. 419; and under deed dated March 10, 1873, and recorded in book 212, p. 186."

In other respects the averments are not important to be given. The appellant was made a party to the application and made answer thereto, in which he denied that the applicant was the owner of lot 24, aforesaid, and asserted that he, the appellant, claimed title to said lot in fee simple by virtue of three certain tax deeds issued to him, as follows: One dated October 24, 1872, based on a sale of property for Chicago city taxes for the year 1869, and recorded November 22, 1872, in book 181, page 50, and that he paid at said tax sale $9.10; one dated October 12, 1872, based on a sale of said property for special assessment warrant No. 998, and recorded January 9, 1873, in book 154, page 419, and that he paid at said tax sale $10.78; and one dated March 10, 1873, based on a sale of said property for the general taxes of 1869, and recorded March 14, 1873, in book 212, page 186, and that he paid at said tax sale $4.73; and asked that if the court should find said tax deeds invalid and the title to said lot 24 in the appellee company, it be decreed to pay him the amount so paid, with interest and legal costs.

The court referred the application to Theodore Sheldon, examiner of titles, etc., to examine into the title of the applicant, and make report of the proof, and his conclusions thereon, to the court. The examiner reported that from the evidence introduced before him, oral and documentary, he finds: "(1) That at the time of the filing of the application the said applicant was the owner in fee simple of the land described in said application; (2) * * * that on February 1, 1889, applicant was in the actual possession of said land under claim and color of title made in good faith, and did for more than seven successive years continue in possession, and did also during said time pay all taxes legally assessed against said

land, and thereby became the owner of the land; (3) that the liens and encumbrances on the land are, agreement of sale in favor of W. J. Reibolt; (4) that other than the said applicant and as above stated herein, no person, firm or corporation have or claim any estate, interest or claim, in law or in equity, in possession, occupation, remainder, reversion, expectancy or otherwise, in said land; (5) that all of the material allegations of said application are substantially true, that the equities are with the applicant and that he is entitled to the relief prayed."

The appellant filed the following objections with the examiner to said report: "(1) Because the examiner impliedly rejects defendant's claim of reimbursement for the sums paid by defendant prior to and since the issuance of the tax deeds named in his answer and shown in evidence, with interest thereon; (2) because the fourth finding of the examiner is contrary to the evidence, inasmuch as defendant, according to the evidence, has an equitable lien upon lot 24 of the premises in question for the moneys paid out as aforesaid." The examiner overruled said objections, and they were renewed as exceptions to said report in the circuit court. The court overruled the exceptions, approved and confirmed the report of the examiner, and rendered the decree appealed from, granting the prayer of the application. The appellant excepted to the overruling of the objections and exceptions as well as to the decree of the court, and has prosecuted this appeal, and has assigned as error that the court erred in overruling each and all of the objections and exceptions of the defendant, Gage, in entering the decree herein, and that said decree is not supported by the evidence.

It is first contended by the appellant that there is no evidence in the record showing that the appellee is incorporated; secondly, that the proof of the payment by appellee of all taxes legally assessed for seven successive years on said premises is wholly insufficient to es-

tablish such payment; and thirdly, that it was error to grant registration of appellee's title without decreeing that appellee should re-imburse him for amounts paid in purchasing the land at the tax sale, and for subsequent taxes, etc.

*First*—The answer filed by appellant did not in any manner refer to or question the alleged corporate capacity of the appellee company. In ordinary actions or suits in chancery, corporate existence, if averred by the plaintiff or complainant, can only be put in issue by a special plea. (5 Ency. of Pl. & Pr. 80; *McIntire* v. *Preston*, 5 Gilm. 48; *Bailey* v. *Valley Nat. Bank*, 127 Ill. 332; *Fischer* v. *Stiefel*, 179 id. 59.) In the absence of a formal denial by appellant, the corporate existence of the appellee corporation, as alleged in the application, is to be regarded as admitted by appellant. *McIntire* v. *Preston, supra.*

*Second*—The question as to the sufficiency of the proof of the payment of taxes by the appellee company was not raised before the examiner or on the trial in the circuit court by objections or exceptions to the examiner's report, and it cannot be raised for the first time in this court. This is a proceeding in chancery. (*Rogers* v. *Tyley*, 144 Ill. 652; *People* v. *Simon*, 176 id. 165.) The relation of the examiner to the court and the parties is analogous to that of the master in chancery in other chancery proceedings, and if no specific objections or exceptions are filed to the finding of the examiner on any branch of the cause the parties cannot complain if the report is approved by the court. The rule as announced by the court with reference to the report of a master in chancery must be held to apply with equal force to the report of an examiner of titles. In *Ennesser* v. *Hudek*, 169 Ill. 494, on page 496 we say: "If the parties are content with the findings of the master and make no objection or exception thereto they cannot complain if the report is adopted by the court; but if the findings are excepted to they may require the court to pass on them and approve or disregard them,

as they may appear to be in accordance with or against the weight of the evidence." As the appellant, by the objections filed, did not point out to the examiner or the court the particular findings of the examiner with which he now expresses dissatisfaction, he must be deemed to have waived all objections to such findings.

*Third*—It is next contended by the appellant that the court erred in failing to decree that he shall be reimbursed for the amount of the taxes, interest and costs paid by him in procuring the tax titles which he held upon lot No. 24, and in paying subsequent taxes assessed against the lot. The proviso to section 224 of chapter 120, entitled "Revenue," provides that any judgment or decree of court setting aside any tax deed shall provide for the payment to the holder of such tax deed of all taxes and legal costs and penalties provided by law, as it should appear the holder of such tax deed, or assigns, had properly paid. In *Gage* v. *Pirtle*, 124 Ill. 502, the meaning of the term "penalty," as used in the proviso, was defined, and we held such term did not mean the per cent on the purchase money required under the statute to be paid to effect redemption, and that all that the proviso required should be paid to the purchaser or holder of the tax title was the amount paid at the sale of the land for taxes, subsequent taxes paid, and interest at the legal rate from the dates of such payments. It was there said that the proviso "really does no more than to enact what this court had decided should be paid as the condition of having a tax deed set aside." In *Ames* v. *Sankey*, 128 Ill. 523, the same construction of the proviso was upheld, and it was said: "This is the uniform rule laid down by this court in a long line of decisions." And *Gage* v. *DuPuy*, 137 Ill. 652, and the cases of *Gage* v. *Pirtle* and *Ames* v. *Sankey*, *supra*, were declared to be conclusive upon the question.

There is a long line of cases holding that it is immaterial, so far as the authority to impose this condition

of re-imbursement in an order canceling or setting aside tax deeds is concerned, whether the action be by the owner who held the title at the time of the tax sale or by a subsequent owner. (*Phelps* v. *Harding*, 87 Ill. 442; *Gage* v. *Schmidt*, 104 id. 106; *Alexander* v. *Merrick*, 121 id. 606; *Gage* v. *Nichols*, 112 id. 269; *Miller* v. *Cook*, 135 id. 190; *Gage* v. *DuPuy*, 137 id. 652; *Cotes* v. *Rohrbeck*, 139 id. 532; *Burton* v. *Perry*, 146 id. 71.) In *Phelps* v. *Harding, supra,* and *Alexander* v. *Merrick, supra,* the point was expressly urged that this condition should not be enforced, as against a subsequent purchaser, upon the ground that such subsequent purchaser was never obligated to pay the taxes, and it was imposing upon him a burden that did not attach to his estate. In *Phelps* v. *Harding* we said (p. 445): "The defendant in error is the aggressor in this controversy, as he claimed the interposition of a court of equity to compel the cancellation of these tax certificates held by the Farwells against these premises, in order that he might be quieted in the possession of the property. He is the actor, and by appealing to a court of equity to aid him to brush out of his way what he deems an obstacle to the beneficial enjoyment of the premises, it would seem equitable and just he should re-imburse the holders of these certificates. They may be of value to them. If they are of no value and of no validity they could not be set up anywhere, in any court, to the injury of the defendant in error. He, however, has treated them as having validity and as calculated to disturb him in the tranquil enjoyment of the property. Those taxes were a charge upon the land and have been paid by plaintiffs in error, and it seems equitable that the defendant in error, seeking to set them aside, should be allowed to do so, upon the condition that he refund the taxes paid and the amount expressed in the certificates of sale to the plaintiffs in error. As the defendant in error desires these certificates put out of his way, equity says, in doing so, require him to pay the money

expressed in them." In *Alexander* v. *Merrick, supra*, on page 615 we said: "But the fact that he bought the property without actual knowledge of the tax sales, and received a covenant of warranty from his vendors that the land was free from tax liens, entitles him to no other or different relief, as against the holders of the tax certificates, than would have been granted to him if he had been the owner of the property at the time it first became subject to the lien of the taxes and special assessments. In *Phelps* v. *Harding, supra*, the party applying for relief against the tax certificates was not the owner of the land described in such certificates when the sales for taxes took place."

The insistence of appellee upon this question, however, is that this proceeding was not an application to cancel of record the tax deeds which appellant held to said lot 24, as being clouds upon the title of the appellee company, and by its counsel insists that it nowhere in its application asked the cancellation of the tax deeds or liens, and that "if the application is not so in word it can not be so in effect, and unless appellee's application may be considered strictly an appeal to equity to remove a cloud, appellant is not entitled to his re-imbursement,"— citing *Gage* v. *Eddy*, 186 Ill. 432. We are unable, however, to agree with this contention, and take the view that this was a proceeding for the cancellation of the tax deeds in order that the cloud upon appellee's title, created by them, might be removed. Such seems to us the reasonable conclusion from the consideration of the act under which this proceeding is brought. The purpose of that act, as disclosed by its many sections, is to so shape the title to real estate that the production of a single certificate of the registrar will disclose an entire title, and thus avoid research through volume after volume of records, and the cost of opinions of experts on real estate law and conveyancing as to the condition of the title. The proceeding must be brought in a court of chancery. The

form of the petition is prescribed by the statute. Not only the form, but the substance, including the prayer, is set out in that act. By the act the petition is called an application for registration, and paragraph "g" of section 11, directing what shall be set forth relating to the claims of other persons, is as follows: "Whether any other person has any estate or claims any interest in the land, in law or equity, in possession, remainder, reversion or expectancy, and if any, set forth the name and post-office address of every such person and the nature of his estate or claim." Section 13 contains the form of the application, and paragraph 6 of that form is as follows: "Other person.., firm or corporation having or claiming any estate, interest or claim in law or equity, in possession, remainder, (reversion) or expectancy in said land are.......Address........Character of estate, interest or claim is......" As to the powers of the court in the proceeding the act provides: "Such court shall have power to inquire into the condition of the title to and any interest in the land, and any lien or encumbrance thereon, and to make all such orders, judgments and decrees as may be necessary to determine, establish and declare the title or interest, legal or equitable, as against all persons, known or unknown, and all liens and encumbrances existing thereon, whether by law, contract, judgment, mortgage, trust deed or otherwise, and to declare the order and preferences as between the same, and to remove clouds from the title." (Sec. 15.) Thus, under the petition prescribed by the act, the court has power to remove clouds from the title, and we do not deem it necessary, when pleading according to a form prescribed by law, that more be stated than the act itself requires to submit all questions that may arise under the consideration of the petition containing the averments required by the act itself. By section 40 of the act the effect of the decree and the rights of registered owners of land brought under the act are defined, as follows: "The registered

owner of any estate or interest in land brought under this act, shall, except in cases of fraud to which he is a party, or of the person through whom he claims without valuable consideration paid in good faith, hold the same subject only to such estates, mortgages, liens, charges and interests as may be noted in the last certificate of title in the registrar's office and free from all others except." Here follow the exceptions, and No. 4 is as follows: "Any tax or special assessment for which a sale of the land has not been had at the date of the certificate of title."

The sales for the taxes under which appellant's deeds were obtained had been made long before this application, and by the bringing of the title under this act, unless he be granted the re-imbursement claimed as a condition to this relief, his right is forever barred and lost.

The Burnt Records act, (Hurd's Stat. 1899, p. 1369,) in reference to the proceeding for registering title, is almost identical with this proceeding. Under that act the suit must be begun in a court of chancery. The requirements of the petition are specified in the act. The court is given power, as in this act, to remove clouds from title, and to declare and establish the title to lands in a proceeding under it. Under that act the suit of *Gage* v. *Caraher*, 125 Ill. 447, was brought, and the point was made that the petition did not aver that the tax titles were invalid or state any grounds upon which they should be removed and set aside. This court, on page 453, answered this, as follows: "This position is untenable. All that is required in respect of adverse claimants or their titles is, that such claimant shall be named in the petition and made defendant. Nothing more is required to give the court jurisdiction, under the statute, to investigate all claims of title to the premises, and by its decree establish and confirm the title in the person in whom it is found to be vested, and to make all such orders, judgments and decrees as shall be necessary to that end."

It was also insisted in that case, that inasmuch as the court had found the tax deeds void, the petitioner ought not to be required to re-imburse the holder of such deeds. In reply to that we said (p. 455): "Although the tax deeds were void, the purchasers at the several sales for taxes, in pursuance of which said deeds were executed, had discharged a burden cast by law upon petitioner, and paid the taxes and costs which were a just charge upon his land, and equity required that before he should, at his own suit, be declared vested with the fee simple title, as against the holders of the tax deeds, he should re-pay the money so advanced for his benefit and to relieve his estate. This was done as to all taxes paid at such sales and subsequent taxes paid under such deeds, and interest thereon. The question arose, here, upon the answer of the defendant, and the court properly found an equitable defense to the relief sought by petitioner to the extent of the taxes paid, and properly refused its relief until the petitioner should do equity by re-paying the same, with legal interest thereon."

So long as appellee was satisfied to let its title remain as it was, without attempting to bring it under the provisions of the Torrens act, it could do so, and appellant had no means of enforcing payment of this tax; but whenever appellee invoked the operation of the law by its petition in chancery, under which its title would be freed from the cloud created by these tax deeds, it brought itself within the rule that "he who seeks equity must do equity," and within the requirement of the statute that he who seeks to set aside a tax deed must pay the tax, with legal interest.

The decree of the circuit court of Cook county is reversed and the cause remanded, with directions to that court to enter a decree in conformity with this opinion.

*Reversed and remanded.*